IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MEGAN L. BOCKMAN,           )
                            )
            Plaintiff,      )
                            )
     v.                     )        1:19CV622
                            )
T & B CONCEPTS OF CARRBORO, )
LLC, d/b/a THE HICKORY      )
TAVERN, et al.,             )
                            )
            Defendants.     )

### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter is before the court on Defendants' Motion to
Dismiss Plaintiff Megan L. Bockman's Complaint for Title VII and
state law violations. (Doc. 6.) Defendants move to dismiss
Plaintiff's Complaint under Federal Rules of Civil Procedure
12(b)(1) and 12(b)(6). (Id.) For the reasons set forth herein,
this court will deny in part and grant in part Defendants'
Motion to Dismiss.

I.    **BACKGROUND**

      A.    **Parties**

      Plaintiff resides in Lee County, North Carolina. (Complaint
("Compl.") (Doc. 1) ¶ 1.)

      Defendants T & B Concepts of Carrboro, LLC, d/b/a The
Hickory Tavern; T & B Concepts of Hickory, LLC, d/b/a The

Hickory Tavern; T & B Concepts of Holly Springs, LLC, d/b/a The Hickory Tavern; T & B Concepts of Parkside, LLC, d/b/a The Hickory Tavern; T & B Concepts of Stratford, LLC, d/b/a The Hickory Tavern; and T & B Concepts of Sun Valley, LLC, d/b/a The Hickory Tavern, are businesses organized under the laws of the state of North Carolina with Brad E. Smith as registered agent and a principal office located at 13900 Conlan Circle, Suite 240, Charlotte, NC 28277-0675. (Id. ¶¶ 2, 7, 9, 12, 16-17.)

Defendants T & B Concepts of Biltmore, LLC, d/b/a The Hickory Tavern; T & B Concepts of Birkdale, LLC, d/b/a The Hickory Tavern; T & B Concepts of Harris, LLC, d/b/a The Hickory Tavern; T & B Concepts of Hoffman Village, LLC, d/b/a The Hickory Tavern; T & B Concepts of Mallard Creek, LLC, d/b/a The Hickory Tavern; T & B Concepts of Mooresville, LLC, d/b/a The Hickory Tavern; T & B Concepts of Pinehurst, LLC, d/b/a The Hickory Tavern; T & B Concepts of Providence, LLC, d/b/a The Hickory Tavern; T & B Concepts of Steelecroft, LLC, d/b/a The Hickory Tavern; T & B Concepts of Toringdon, LLC, d/b/a The Hickory Tavern; and T & B Concepts of Wesley Chapel, LLC, d/b/a The Hickory Tavern, are businesses organized under the laws of the state of North Carolina with Thomas A. Hager as registered agent and a principal office located at 13900 Conlan Circle,

Suite 240, Charlotte, NC 28277-0675. (Id. ¶¶ 4-6, 8, 10-11, 13-15, 18-19)

Defendant T & B Management, LLC, d/b/a The Hickory Tavern, is a limited liability company organized under the laws of the state of North Carolina with Thomas A. Hager as registered agent, a principal office located at 13900 Conlan Circle, Suite 240, Charlotte, NC 28277-0675, and which does business in North Carolina, South Carolina, Tennessee, and Alabama. (Id. ¶ 3.)

### B.   Factual Background

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (quoting King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)).

Although a motion to dismiss "tests the sufficiency of a complaint," Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013), and this court's evaluation is "thus generally limited to a review of the allegations of the complaint itself," Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016), this court may consider documents that are incorporated into the complaint by reference where the document is integral to the complaint, see id. at 166, and the plaintiff does not challenge the documents' authenticity, see Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); see also

- 3 -

*Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 580 (M.D.N.C. 2003) ("The underlying concern in cases applying this rule is to protect a *plaintiff* who might not have notice of (and an opportunity to fully respond to) facts newly introduced by the *defendant* in conjunction with motion of dismissal."). Other courts within the Fourth Circuit have considered Equal Employment Opportunity Commission ("EEOC") charges attached to motions to dismiss, where plaintiffs relied on those documents in their complaints and did not contest the exhibits' authenticity. *See, e.g.*, *Alexander v. City of Greensboro*, No. 1:09-CV-934, 2011 WL 13857, at *6-8 (M.D.N.C. Jan. 4, 2011); *Cohen v. Sheehy Honda of Alexandria, Inc.*, No. 1:06cv441 (JCC), 2006 WL 1720679, at *2 (E.D. Va. June. 19, 2006) (finding the EEOC charge was integral to complaint because plaintiff "would have been unable to file a civil action without first filing such a charge").

This court finds that Plaintiff's Complaint incorporates by reference Plaintiff's Charge of Discrimination to the EEOC, which Defendants attached as an exhibit to their Memorandum in

- 4 -

Support of their Motion to Dismiss. (Charge of Discrimination ("EEOC Charge") (Doc. 7-1) at 2-3.)[1]

First, the Charge of Discrimination is integral to Plaintiff's Complaint. The same incidents form the basis for the allegations in Plaintiff's Complaint and the Charge of Discrimination, (compare Compl. (Doc. 1) ¶¶ 29-65, with EEOC Charge (Doc. 7-1) at 2-3), and this court's jurisdiction is predicated on Plaintiff having filed the Charge of Discrimination and received a Right to Sue Letter, see 42 U.S.C. § 2000e-(5)(f) et seq. Plaintiff's Complaint establishes that Plaintiff "timely submitted a charge of employment discrimination on the basis of retaliation, sex, and disability" to the EEOC and "[o]n March 22, 2019, the EEOC issued to Plaintiff a Dismissal and Notice of Rights to sue." (Compl. (Doc. 1) ¶ 28.)

Second, Plaintiff does not challenge the authenticity of the Charge of Discrimination. Plaintiff refers to the Charge of Discrimination in her Complaint, (see id.), and in support of her arguments in her Memorandum in Opposition to Defendants'

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Motion to Dismiss, (see, e.g., Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Pl.'s Resp.") (Doc. 11), at 9, 11.) Although Plaintiff did not attach the Charge of Discrimination to her Complaint, Plaintiff did attach the EEOC's ensuing Dismissal and Notice of Rights. (Compl. (Doc. 1) at 18.)

Defendants cite allegations in the Charge of Discrimination in their Memorandum in Support of their Motion to Dismiss. (See e.g., Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 7) at 9.) In her response, Plaintiff does not object to consideration of these facts. (See Pl.'s Resp. (Doc. 11) at 9, 11.)

In the absence of any objection, this court will consider the allegations in the Complaint to incorporate those in the Charge of Discrimination, and the facts contained therein will be considered part of Plaintiff's Complaint, to the extent that Plaintiff has satisfied requirements for administrative exhaustion. (See discussion infra Section III.B.2.)

The facts, taken in the light most favorable to Plaintiff, are as follows.

Plaintiff is a woman who worked for Defendants between August 2015 and April 2018 (Compl. (Doc. 1) ¶¶ 30, 60, 65; EEOC Charge (Doc. 7-1) at 2.) She alleges she interviewed for her original position with Human Resources representative, Kathie

- 6 -

Ray, in Charlotte, North Carolina, and with Shelly Walters. (Id. ¶ 30.) Plaintiff alleges she initially began by working with Defendant T & B Concepts of Sun Valley, d/b/a Hickory Tavern ("HT-Sun Valley") in Sun Valley, North Carolina, (id.), but moved several times for managerial training, after which, in August 2016, she was placed at Defendant T & B Concepts of Carrboro, d/b/a Hickory Tavern ("HT-Carrboro") in Carrboro, North Carolina, (id.) Plaintiff alleges she never interviewed or completed new hire paperwork at any subsequent Hickory Tavern location after she left HT-Sun Valley. (Id. ¶ 31.)

Plaintiff alleges she relocated to Carrboro to provide for her son, who she alleges is disabled. (Id. ¶ 32.) When she began working at HT-Carrboro, there were not any "key manager" roles available, so she alleges she was demoted. (Id.) Plaintiff alleges she was "given assurance of a promotion when something became available." (Id.)

Plaintiff alleges that three days after she began her employment at HT-Carrboro, another employee, Brandon Penny, "verbally assaulted" Plaintiff after General Manager Brent Wall asked Plaintiff to help Mr. Penny with the grill. (Id. ¶¶ 33-34.) Plaintiff alleges another employee, Michael Baldwin, had to step in between Plaintiff and Mr. Penny and remind Mr. Penny that Plaintiff was a woman. (Id. ¶ 35.) Plaintiff alleges Mr.

Wall learned of the situation and sat down with Plaintiff and Mr. Penny to "advise them that they needed to figure out how to work together." (Id. ¶ 36.) Plaintiff alleges no disciplinary action was taken against Mr. Penny. (Id.) Plaintiff alleges that in or around October 2016, Mr. Penny and Plaintiff were promoted to "Key Manager." (Id. ¶ 37.) Plaintiff alleges Mr. Penny continued to "verbally assault" Plaintiff, as well as other staff members. (Id. ¶ 38.)

In or around November 2016, Plaintiff alleges she asked Manager Justin Dreaver whether employees would be paid before or after Thanksgiving "so that she could best plan to provide for herself and her disabled son." (Id. ¶ 39.) Mr. Dreaver allegedly said, "That sucks, but I don't know. Maybe you should learn how to plan better for the future." (Id. ¶ 40.)

In or around January 2017, Plaintiff alleges she was asked to take a management position after Mr. Wall "was intoxicated on the job; took beer from behind the bar; stood on a table; and broke a flat screen TV by kicking it." (Id. ¶ 41.) Plaintiff alleges the position entitled her to make "salary pay," but she instead was compensated at a much lower hourly rate. (Id. ¶ 42.)

In or around March 2017, Plaintiff alleges Mr. Penny was arrested for cocaine and marijuana possession while purchasing food for the company. (Id. ¶ 43.) Plaintiff alleges Defendants

- 8 -

did not discipline Mr. Penny, but instead, allowed him to return to work. (Id.)

In or around May 2017, Plaintiff alleges she requested vacation leave from General Manager Rodney Huskins. Mr. Huskins allegedly denied her request, stating that "he needed to take vacation and that his time was more important than hers." (Id. ¶ 44.) Plaintiff alleges Mr. Huskins would "continually" scream at Plaintiff and "tell her that she was worthless." (Id. ¶ 45.)

In or around October 2017, Plaintiff alleges Antoine Spates became the new Kitchen Manager at HT-Carrboro. (Id. ¶ 46.) Shortly thereafter, Plaintiff alleges she and another employee were discussing children when Mr. Spates "interjected" and told Plaintiff that "she had no right to raise a male child on her own" because doing so would be similar to "a pigeon teaching an eagle how to fly, it's not possible." (Id. ¶ 47.) Plaintiff alleges she complained to Mr. Huskins, Human Resources Representative Kathie Ray, and the regional manager (Id. ¶ 48.) Plaintiff alleges she was told that "she needed to work together with Mr. Spates and learn how to get along." (Id. ¶ 49.)

In or around December 2017, Plaintiff requested to transfer from full-time to part-time employment so that she could be home more often to take care of her son. (Id. ¶ 50.) Mr. Huskins allegedly denied her request by cursing at her, stating that

Plaintiff should be ashamed of herself, and telling Plaintiff
that she was selfish for being home and collecting a government
check. (Id. ¶ 51.) During this time period, Plaintiff alleges
she requested vacation time, which was denied again. (Id. ¶ 52.)
Mr. Huskins allegedly told Plaintiff that the managers'
vacations were more important and that Mr. Spates needed the
time to be with his family. (Id. ¶ 53.)

In or around February 2018, after another employee, Mary
Maloney, asked Plaintiff to do an inventory of food in the
restaurant, Mr. Spates allegedly "became upset and ridiculed
Plaintiff in front of the entire staff, constantly insulted
Plaintiff, wrote her up, and finally sent her home." (Id. ¶ 54.)
Plaintiff complained to Ms. Ray in Human Resources regarding the
incident, (id. ¶ 55), but Mr. Huskins allegedly refused to
correct the situation with Mr. Spates and said, "they needed to
learn how to work together." (Id. ¶ 56.) Plaintiff alleges Mr.
Spates' abusive behavior "continued as he repeatedly sent
Plaintiff home and belittled her in front of other co-workers."
(Id. ¶ 57.) Plaintiff alleges she wrote another complaint to
Human Resources in or around March 2018. (Id. ¶ 58.) Plaintiff
alleges a subsequent investigation found that Mr. Spates
exhibited "this kind of behavior to several other female

employees." (Id. ¶ 59.) As a result, the regional manager transferred Mr. Spates to a different location. (Id.)

In or around April 2018, after Mr. Spates' transfer, Plaintiff inquired about the open manager position, but Mr. Huskins told her that the position was not going to be filled and was not open. (Id. ¶ 60.) Plaintiff alleges that, despite telling her the position was not open, Mr. Huskins later promoted another employee to the position. (Id. ¶ 61.) Plaintiff alleges she asked Mr. Huskins about why she was not given the promotion, and he told her she "had no shot . . . at a promotion after what happened between Plaintiff and Antoine Spates." (Id. ¶ 62.) Mr. Huskins also allegedly told her, "remember, you're part time. Now go home and deal with your disabled kid that needs you so much because there is no use for you here anymore." (Id. ¶ 63.) Plaintiff alleges she was humiliated and unable to receive any assistance from management to make the work environment "less hostile," (id. ¶ 64), so she was "unable to return back to work," (id. ¶ 65). Plaintiff alleges she left her employment with HT-Carrboro on April 27, 2018. (EEOC Charge (Doc. 7-1) at 2.)

C.  **Procedural History**

Plaintiff filed a charge of employment discrimination on the basis of sexual harassment, disability discrimination, and

- 11 -

retaliation with EEOC on May 31, 2018. (EEOC Charge (Doc. 7-1) at 2.) Plaintiff filed her Complaint in this court on June 21, 2019. (Compl. (Doc. 1) at 16.) This court has federal question jurisdiction over this case under 28 U.S.C. § 1331. (Id. ¶ 27.) Defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), (Doc. 6), and a supporting memorandum, (Defs.' Br. (Doc. 7)). Plaintiff responded, (Pl.'s Resp.) (Doc. 11)), and Defendants filed a Reply. ("Defs.' Reply") (Doc. 12).) This matter is ripe for adjudication.

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(6)

Defendants move to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6). (Defs.' Br. (Doc. 7) at 5-6.) To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556-57). When ruling on a motion to dismiss, this court

- 12 -

accepts the complaint's factual allegations as true. Id.
Further, this court liberally construes "the complaint,
including all reasonable inferences therefrom, . . . in the
plaintiff's favor." Estate of Williams-Moore v. All. One
Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C.
2004) (citation omitted). This court does not, however, accept
legal conclusions as true, and "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." Iqbal, 556 U.S. at 678.

Employment discrimination complaints must meet this
plausibility standard; however, the plaintiff is not required to
make out a prima facie case of discrimination or satisfy any
heightened pleading requirements at the motion to dismiss stage.
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002); McCleary-
Evans v. Md. Dep't of Transp., 780 F.3d 582, 584–85 (4th Cir.
2015). The plaintiff need only plead facts that permit the court
to reasonably infer each element of the prima facie case.
McCleary-Evans, 780 F.3d at 585; see also Coleman v. Md. Court
of Appeals, 626 F.3d 187, 191 (4th Cir. 2010) (stating that a
complaint must "assert facts establishing the plausibility" that
plaintiff was terminated based on race).

- 13 -

**B.  Rule 12(b)(1)**

Defendants also move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(1). (Defs.' Br. (Doc. 7) at 5.) Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must prove by a preponderance of the evidence the existence of subject-matter jurisdiction. See Demetres v. East West Constr., Inc., 776 F.3d 271, 272 (4th Cir. 2015). A defendant may challenge subject-matter jurisdiction facially or factually. See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, a defendant asserts that the allegations, taken as true, are insufficient to establish subject-matter jurisdiction. See id. The court then effectively affords a plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration," taking the facts as true and denying the Rule 12(b)(1) motion if the complaint "alleges sufficient facts to invoke subject matter jurisdiction." Id.

In a factual challenge, a defendant asserts that the jurisdictional allegations are false, and the court may look beyond the complaint to resolve the disputed jurisdictional facts without converting the motion to one for summary judgment. Id. at 192-93.

- 14 -

III. **ANALYSIS**

Plaintiff alleges the following causes of action against Defendants: First, sex discrimination and hostile work environment in violation of Title VII; second, disability discrimination in violation of the Americans with Disabilities Act ("ADA"); third, retaliation in violation of Title VII; fourth, negligent hiring, supervision, and retention in violation of North Carolina state law; fifth, civil assault in violation of North Carolina state law. (Compl. (Doc. 1) at 10-14.)

A. **Claims against Defendants using a "Single Legal Entity Theory"**

As a preliminary matter, although the allegedly discriminatory conduct occurred while Plaintiff was an employee of Defendant HT-Carrboro, Plaintiff asserts that Defendants are liable for all claims under a "single legal entity" theory. (Id. ¶¶ 109-13.) Defendants argue that Plaintiff's claims against entities that did not directly employ Plaintiff should be dismissed because Defendants are not a single legal entity and Plaintiff has "failed to state a claim upon which relief can be granted against any HT entity other than T&B Concepts of Sun Valley, LLC d/b/a Hickory Tavern and T&B Concepts of Carrboro, LLC d/b/a Hickory Tavern." (Defs.' Br. (Doc. 7) at 7.)

- 15 -

Although the defendants must generally employ a plaintiff in order to be liable for employment discrimination, defendants who do not directly employ a plaintiff may still be considered the plaintiff's employer in civil rights lawsuits. See, e.g., Dunlap v. TM Trucking of the Carolinas, LLC, 288 F. Supp. 3d 654, 664 (D.S.C. 2017). Under the "integrated employer" or "single employer" doctrine, "a parent company and its subsidiary can be considered a single employer for purposes of Title VII liability," Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 409 n.3 (4th Cir. 2015) (internal quotations omitted), when they are so "interrelated that they constitute a single employer," Hukill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir. 1999), abrogated on other grounds, Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143 (4th Cir. 2012).

To determine whether to treat corporate entities as an "integrated employer," courts consider the following factors: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." Hukill, 192 F.3d at 442. Although "no single factor is conclusive," control of labor operations "is the most critical factor." Id. (citing Schweitzer v. Advanced Telemarketing Corp., 104 F.3d 761, 764

- 16 -

(5th Cir. 1997) (finding that control of labor relations has traditionally been the most important)).

Whether separate entities constitute a single employer is a "fact-intensive inquiry." Tasciyan v. Med. Numerics, 820 F. Supp. 2d 664, 672 (D. Md. 2011). First, to determine whether employers exercised common management, "courts look to whether the separate corporations share a common manager who runs day-to-day operations and has the authority to hire and fire employees." Gilbert v. Freshbikes, LLC, 32 F. Supp. 3d 594, 603 (D. Md. 2014); see also Hukill, 192 F.3d at 443; Baker v. Stuart Broad. Co., 560 F.2d 389, 392 (8th Cir. 1977) (finding common management and ownership where the same individual was president of both corporations and ran day-to-day operations). Second, Plaintiffs may prove interrelation between operations "through evidence of a common manager who runs day-to-day operations and through employee transfers between locations." Gilbert, 32 F. Supp. 3d at 603; see also Hukill, 192 F.3d at 443. Third, to prove control of labor relations, plaintiffs must show that "a single party controls employment decisions across multiple corporations," including the power to "hire, fire, supervise, and set employee schedules." Gilbert, 32 F. Supp. 3d at 603; see also Hukill, 192 F.3d at 444 (finding no centralized control of labor operations when the company had "no power to hire, fire,

- 17 -

or supervise employees" at the allegedly related companies). Fourth, plaintiffs may prove common ownership when one individual "owns and has financial control over the different enterprises." Gilbert, 32 F. Supp. 3d at 603.

Plaintiff plausibly alleges that Defendants are a single legal entity. Under the second prong, the facts alleged in Plaintiff's Complaint support a reasonable inference of interrelation between Defendants' operations. Plaintiff alleges that she "began her employment" as an employee at HT-Sun Valley in August 2015, and "was moved several times for managerial training" until she was ultimately "placed at Hickory Tavern in Carrboro in August of 2016." (Compl. (Doc. 1) ¶ 30.) Similarly, Plaintiff alleges Mr. Spates "was moved to the Carrboro location as the new Kitchen Manager" in or around October 2017, (id. ¶ 46), and Mr. Spates was "transferred to a different location by the regional manager" following an investigation by Human Resources, (id. ¶ 59). Because Plaintiff's Complaint plausibly alleges that employees transferred between locations, this court can reasonably infer interrelation between Defendants' operations. See Gilbert, 32 F. Supp. 3d at 603.

Plaintiff plausibly alleges that a single party controls employment decisions across multiple corporations and that the corporations have common management under the first and third

- 18 -

prongs. See Gilbert, 32 F. Supp. 3d at 603. Plaintiff alleges she interviewed with a Human Resources representative, Kathie Ray, in Charlotte, North Carolina, upon her hire, (Compl. (Doc. 1) ¶ 30), and "did not have to interview or complete new hire paperwork at any of the subsequent locations," (id. ¶ 31). Plaintiff was able to escalate her workplace complaints to a "regional manager," (id. ¶ 48), and a "regional manager" was responsible for transferring Mr. Spates to a different location following issues in his performance, (id. ¶ 59). The facts alleged support a reasonable inference that there was centralized control over the hiring, firing, and supervision of employees and that the corporations share a common manager who has the authority to hire and fire employees. Gilbert, 32 F. Supp. 3d at 603.

Finally, under the fourth prong, Plaintiff plausibly alleges that Defendants are engaged in common ownership. Defendants are limited liability companies with the same principal office in Charlotte, North Carolina, and list either

- 19 -

Thomas A. Hager or Brad E. Smith as their registered agent.[2] (See Compl. (Doc. 1) ¶¶ 2-19.) These similarities in registration documents support a reasonable inference that the same individuals "own[] and ha[ve] financial control over the different enterprises." Gilbert, 32 F. Supp. 3d at 603.

Accordingly, because Plaintiff has plausibly alleged that Defendants are a single entity, this court will deny Defendants' Motion to Dismiss for failure to state a claim against Defendants under an "integrated entity" or "single entity" theory. It may be that development of the factual record in discovery could lead to a different result at summary judgment, but at this stage of the proceedings, the facts support a plausible inference of an integrated entity.

## B.    Administrative Exhaustion of Title VII and ADA Claims

Defendants also move to dismiss Plaintiff's claims on the grounds that Plaintiff has not exhausted the administrative procedural requirements of 42 U.S.C. § 2000e-5(b) et seq., as

---

[2] In her Response, Plaintiff attaches copies of Defendants' "Limited Liability Company Annual Reports," which indicate that Thomas A. Hager is the Registered Agent of each entity and Brad Smith is the Manager. (See Pl.'s Resp. (Doc. 11) Ex. A (Doc. 11-1).) Although this is inconsistent with the allegations in Plaintiff's Complaint, which alleges that either Brad Smith or Thomas Hager is the registered agent, (see Compl. (Doc. 1) ¶¶ 2-19), this court finds that either scenario would support a reasonable inference of Defendants' common ownership.

required for courts to hear claims under Title VII and the ADA. (Defs.' Br. (Doc. 7) at 8.)

### 1. Claims against Defendants Not Named in Plaintiff's Charge of Discrimination to the EEOC

Defendants argue that all Title VII and ADA claims against entities other than HT-Carrboro should be dismissed because Plaintiff "never filed a Charge of Discrimination with the EEOC against any [Hickory Tavern] entity other than HT-Carrboro." (Id. at 9.)

Before a federal court may hear a plaintiff's claims of employment discrimination, the plaintiff must file a Charge of Discrimination with the EEOC and exhaust the administrative procedural requirements of 42 U.S.C. § 2000e-5(b) et seq. Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). "The failure to name a party in an EEOC charge may constitute a failure to exhaust administrative remedies . . . ." EEOC v. 1618 Concepts, Inc., 432 F. Supp. 3d 595, 603 (M.D.N.C. 2020). "The purpose of the naming requirement is two-fold: (1) to notify the charged party of an alleged violation, and (2) to secure the charged party's compliance with the law." Id. (citing Alvarado v. Bd. of Trs. Of Montgomery Cmty. Coll., 848 F.2d 457, 458-59 (4th Cir. 1988)). "If these two purposes are satisfied, the naming requirement has also been satisfied." Id. (citing Causey

- 21 -

v. Balog, 162 F.3d 795, 800-01 (4th Cir. 1998)). Courts analyze whether plaintiffs have satisfied the Title VII naming requirements "under the Rule 12(b)(6) standard." Id.

Plaintiff argues that there is a "substantial identity" exception to the general rule that a Title VII civil action may only be brought against the defendant listed on the charge, citing the decision in Mayes v. Moore, 419 F. Supp. 2d 775 (M.D.N.C. 2006). (Pl.'s Resp. (Doc. 11) at 9-10.) "[T]he Fourth Circuit has only discussed the substantial identity exception in dicta," 1618 Concepts, 432 F. Supp. 3d at 604 (citing Alvarado, 848 F.2d at 461 (identifying seven district court decisions in the Fourth Circuit applying the exception and finding that "where there is substantial, if not complete identity of parties before the EEOC and the court, it would require an unnecessarily technical and restrictive reading of the statute to deny jurisdiction") (internal quotations and citations omitted)), but other courts in this district have applied the exception, see, e.g., Shaughnessy v. Duke Univ., No. 1:18-CV-461, 2018 WL 6047277, at *3 (M.D.N.C. Nov. 19, 2018); Keener v. Universal Cos., 128 F. Supp. 3d 902, 915 (M.D.N.C. 2015).

Under this exception, courts consider four factors:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2)

- 22 -

> whether, under the circumstances, the interests of a
> named [party] are so similar as the unnamed party's
> that for the purpose of obtaining voluntary
> conciliation and compliance it would be unnecessary to
> include the unnamed party in the EEOC proceedings; 3)
> whether its absence from the EEOC proceedings resulted
> in actual prejudice to the interests of the unnamed
> party; 4) whether the unnamed party has in some way
> represented to the complainant that its relationship
> with the complainant is to be through the named party.

Mayes, 419 F. Supp. 2d at 783 (citing Glus v. G.C. Murphy Co.,
562 F.2d 880, 888 (3d Cir. 1977)).[3]

First, the allegations in Plaintiff's Complaint support a
reasonable inference that Plaintiff could have ascertained the
names of the other unnamed entities through reasonable effort.
The facts in the instant case are distinguished from those in
1618 Concepts, Inc., in which the court held that a dishwasher
had no prior knowledge of the corporate structure of the
defendants. 432 F. Supp. 3d at 605. In that case, the defendants
gave the employee an employee handbook which "repeatedly"

---

[3] Despite correctly articulating the test for substantial
identity, (see Pl.'s Resp. (Doc. 11) at 9), Plaintiff appears to
misunderstand how to apply the factors. In support of her
argument that the factors weigh in her favor, Plaintiff states
that "the parent company and affiliate companies could have been
identified through reasonable effort" and that the entities "are
so similar that for the purpose of obtaining voluntary
conciliation and compliance it would be necessary to include the
named parties in this lawsuit." (Id.) Based on the context in
which Plaintiff makes this statement, this appears to be an
error, and this court will not view this as a concession.

referred throughout to the name of the individual restaurant and not the holding company, as well as paperwork which named only the restaurant, not the holding company. Id. The court determined that, under these circumstances, it was not clear that the employee should have known, through reasonable effort, that the holding company, not the restaurant, was his employer. Id.

Unlike in 1618 Concepts, Inc., the facts in Plaintiff's Complaint support a reasonable inference that she knew about Defendants' corporate structure. Plaintiff's Complaint alleges that Plaintiff "began her employment with the Defendant" at HT-Sun Valley in August 2015 and "was moved several times for managerial training until she was placed at Hickory Tavern in Carrboro in August of 2016." (Compl. (Doc. 1) ¶ 30.) Despite working at the Sun Valley and Carrboro locations, among others, she interviewed for the position with a Human Resources representative located in Charlotte, North Carolina, (id.), and "she did not have to interview or complete new hire paperwork at any of the subsequent locations," (id. ¶ 31). When Plaintiff had complaints about how she was treated, she escalated her concerns to Ms. Ray and "the regional manager." (Id. ¶¶ 48, 55, 58.) After Human Resources conducted an investigation that corroborated her concerns about Mr. Spates' behavior, Plaintiff

- 24 -

alleges a "regional manager" transferred Mr. Spates to "a different location." (Id. ¶ 59.) Despite her experience with regional managers, individuals in Human Resources in Charlotte, and other locations operating under the Hickory Tavern name, Plaintiff named only "T & B Concepts Carrboro D/B/A The Hickory Tavern" on her Charge of Discrimination. (EEOC Charge (Doc. 7-1) at 2.) The facts alleged support a reasonable inference that Plaintiff could have ascertained the role of the unnamed parties through reasonable effort at the time she filed her EEOC Complaint, and this court finds that the first factor weighs in favor of Defendants.

Second, Plaintiff has plausibly alleged that the interests of Defendant HT-Carrboro are so similar to those of the unnamed Defendants that it would be unnecessary to include the unnamed Defendants in the EEOC proceedings. Plaintiff's Complaint alleges that Defendants share the same principal office in Charlotte, North Carolina, and that either Thomas A. Hager or Brad E. Smith are their registered agent.[4] (See Compl. (Doc. 1)

---

[4] Defendants' "Limited Liability Company Annual Reports" indicate that Thomas A. Hager is the Registered Agent of each entity and Brad Smith is the Manager. (Pl.'s Resp. (Doc. 11) Ex. A (Doc. 11-1).) Although this is inconsistent with the allegations in Plaintiff's Complaint, (see Compl. (Doc. 1) ¶¶ 2-19), either scenario would support a reasonable inference of Defendants' shared interests under the substantial identity test.

¶¶ 2-19.) These alleged facts reasonably suggest that Defendants "share employees and have common ownership, management, and corporate officers," as required to show that Defendants' interests are interrelated under the second factor of the substantial identity test. 1618 Concepts, Inc., 432 F. Supp. 3d at 605. Accordingly, this factor weighs in favor of Plaintiff.

"The third factor considers actual prejudice to the unnamed party" during the EEOC proceedings. Id. Plaintiff's Complaint does not provide any information about the inquiry conducted during those proceedings, aside from attaching the Right to Sue notice to her Complaint. (See Compl. (Doc. 1) at 18.) In that notice, the EEOC stated that the EEOC was "unable to conclude that the information obtained establishes violations of the statutes." (Id.) Because the EEOC did not find against Defendant HT-Carrboro as a result of its investigation, this court reasonably infers that there was not "actual prejudice" against them or the other unnamed Defendants. Accordingly, the third factor weighs in Plaintiff's favor.

Finally, the "fourth factor examines whether the unnamed party has represented to the complainant that its relationship with him is to be through the named party." 1618 Concepts, Inc., 432 F. Supp. 3d at 605. Plaintiff's Complaint alleges that she was initially hired to work at the Sun Valley restaurant after

- 26 -

interviewing with Kathie Ray, a Human Resources representative in Charlotte, North Carolina, (Compl. (Doc. 1) ¶ 30), and that she ultimately began working at HT-Carrboro after working at several other restaurants. (Id.) These facts, as alleged, support a reasonable inference that the unnamed Hickory Tavern restaurants represented to Plaintiff that she was an employee of all Hickory Tavern restaurants in North Carolina, not just of Defendant HT-Carrboro. Accordingly, this fourth factor weighs in favor of Defendants.

Examining all the relevant factors, this court finds that the dual purposes of the naming requirement have been satisfied. See 1618 Concepts, 432 F. Supp. 3d at 603. Although under the first and fourth factors Plaintiff's allegations support a reasonable inference that Plaintiff could have ascertained through reasonable efforts the role of the unnamed parties at the time of filing the EEOC Charge. Defendants represented to Plaintiff that its relationship with Plaintiff would be through other parties. Plaintiff has plausibly alleged that Defendants' operations are interrelated and Defendants were not unfairly prejudiced during the EEOC proceedings. Of the four factors, courts find that the second and third "speak most directly to the dual purposes of the Title VII naming requirement," id. at 604, because "they are most reflective of the two-fold purpose

- 27 -

of the naming requirement, that is, providing notice and an opportunity for voluntary conciliation." <u>Keener</u>, 128 F. Supp. 3d at 915-16 (internal citations and quotations omitted). Because the facts alleged support a reasonable inference that Defendants had notice of the charges against them, this court will not dismiss Plaintiff's Title VII and ADA complaints against Defendants other than Defendant HT-Carrboro for failure to exhaust the required administrative procedures.

### 2. <u>Causes of Action Not Alleged in Plaintiff's Charge of Discrimination to the EEOC</u>

#### a. <u>Parties' Arguments</u>

Defendants also argue that this court should dismiss causes of action not named in Plaintiff's Charge of Discrimination to the EEOC for failing to exhaust required administrative procedures. (Defs.' Br. (Doc. 7) at 9.)

Defendants argue Plaintiff's Charge of Discrimination alleges that "(1) she was subject to a hostile work environment and (2) she was refused a promotion to the 'new management position in the front of the house,'" (<u>id.</u> (citing EEOC Charge (Doc. 7-1) at 2)), but that Plaintiff's Complaint contains "the additional allegations that [Defendants] (1) paid her differently based on her sex, (2) retaliated against her by subjecting her to verbal abuse, denying her requests for

vacation leave, and not promoting her to Spates' former Kitchen Manager position, and (3) constructively discharged her." (Id. at 9-10 (citing Compl. (Doc. 1) ¶¶ 60-63, 71, 84-85, 87, 113).) Defendants argue that this court lacks jurisdiction over Plaintiff's "newly raised litigation claims because they are beyond the scope of the allegations set forth in Plaintiff's Charge and could not reasonably have been discovered by the EEOC in its investigation of the Charge." (Id. at 10.)

Plaintiff argues that she has satisfied all requirements for administrative exhaustion because "[h]er charge lists that the discrimination by the Defendants was based on sex, disability and retaliation." (Pl.'s Resp. (Doc. 11) at 11 (citing EEOC Charge (Doc. 7-1) at 2).) Plaintiff argues that, based on the boxes she marked on the Charge of Discrimination, "Defendants were placed on notice of all of Plaintiff's causes of action." (Id.)

### b. **Legal Standard**

"Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see also Chacko, 429 F.3d at 509 ("[T]he factual

- 29 -

allegations made in formal litigation must correspond to those set forth in the administrative charge."); Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (finding if "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred").

Although "[t]he allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint," Evans, 80 F.3d at 962-63, because "lawyers do not typically complete the administrative charges, . . . courts construe them liberally." Chacko, 429 F.3d at 509. Where "the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." Id. (citing Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1118 (7th Cir. 2001) ("[T]he EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals."); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247-48 (4th Cir. 2000) (holding plaintiff exhausted administrative remedies when both the formal complaint and the administrative charge alleged management retaliated against her because she complained about supervisor's sexual harassment).

- 30 -

A plaintiff's claim will generally be barred if her charge alleges discrimination on one basis, such as race, and her complaint alleges discrimination on another basis, such as sex. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132-33 (4th Cir. 2002). Similarly, a claim will be barred if the charge of discrimination alleges one type of discrimination, such as discriminatory failure to promote, and the complaint alleges another, such as discrimination in pay. See Evans, 80 F.3d at 963-64; see also Lawson v. Burlington Indus., Inc., 683 F.2d 862, 863-64 (4th Cir. 1982) (finding that plaintiff's claim of discriminatory failure to rehire was barred because charge alleged only illegal layoff).

Moreover, allegations of a discrete act or acts of discrimination in the charge of discrimination are insufficient to support allegations of a pattern of misconduct in a plaintiff's complaint in federal court. See Dennis, 55 F.3d at 153, 156-57 (finding that the charge of discrimination to the EEOC, in which the plaintiff alleged acts of discriminatory discipline, did not give rise to support a pattern of discrimination in hiring, training, or promotion, as alleged in the plaintiff's complaint). "If the factual foundation in the administrative charge is too vague to support a claim that is

later presented in subsequent litigation, that claim will also be procedurally barred." Chacko, 429 F.3d at 509.

### c. Alleged Discriminatory Conduct which Occurred Before August 2017

This court finds that Plaintiff has not exhausted her administrative requirements regarding discriminatory conduct that occurred prior to August 2017.

In her Complaint, Plaintiff alleges she experienced discrimination as early as August 2016 based on conduct by Mr. Penny, (Compl. (Doc. 1) ¶¶ 33-38), Mr. Dreaver, (id. ¶¶ 39-40), and Mr. Huskins, (id. ¶¶ 44-45). In particular, Plaintiff alleges that Mr. Penny's verbal assaults during this time period, (id. ¶¶ 34, 38), and Mr. Huskins "screaming at Plaintiff and telling her she was worthless," (Pl.'s Resp. (Doc. 11) at 12 (citing Compl. (Doc. 1) ¶ 45)), contributed to the hostile work environment she experienced. (Id.) Plaintiff also alleges that Mr. Huskins denied Plaintiff's request for vacation leave in or around May 2017, stating that "he needed to take vacation and that his time was more important than hers." (Compl. (Doc. 1) ¶ 44.)

Yet, Plaintiff's Charge of Discrimination does not name Mr. Penny or Mr. Dreaver, nor does it indicate Plaintiff experienced any discrimination during this time period. (See

EEOC Charge (Doc. 7-1) at 2.) Instead, Plaintiff's Charge of Discrimination alleges that the discrimination began much later, either in August 2017, according to the text of the Charge, (id.), or October 1, 2017, according to the box in which Plaintiff indicated the period in time in which the "discrimination took place." (Id.) Construing the alleged facts in the light most favorable to Plaintiff, this court finds that Plaintiff's Charge of Discrimination alleges the discrimination began in August 2017.

"[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge." Chacko, 429 F.3d at 509. Because the dates of discrimination in Plaintiff's administrative charge and her Complaint do not correspond, Plaintiff has not exhausted her administrative requirements for any discrimination that may have occurred prior to August 2017. Accordingly, this court will not consider any conduct that Plaintiff's Complaint alleges occurred prior to that date when analyzing her Title VII claims, including allegations that Mr. Huskins, during this time period, "would continually scream at Plaintiff and tell her that she was worthless," (Compl. (Doc. 1) ¶ 45), any conduct by Mr. Penny or Mr. Dreaver, (id. ¶¶ 34, 38-40), or allegations Plaintiff was denied vacation leave in May 2017, (id. ¶ 44).

- 33 -

### d. Allegations of Retaliatory Denial of Vacation Leave

Plaintiff also has not exhausted her administrative requirements regarding allegations of retaliatory denial of vacation leave after August 2017.

Plaintiff's Charge of Discrimination indicates that the retaliation she experienced was due to her sex and for "being a single mother and dealing with the care of my disabled son." (EEOC Charge (Doc. 7-1) at 2-3.) According to the events alleged in the Charge, Plaintiff requested to work part-time, after which Mr. Spates and Mr. Huskins told her she was a "loser as a single mother, that I was being selfish because I wanted to work part time, that the only reason why I wanted to work part time was because I wanted to collect government checks for my disabled son, and that I was . . . useless." (Id. at 2.) Plaintiff alleges she complained to Human Resources about this conduct on March 20, 2018, after which Mr. Spates ended up being transferred to another store, (id.), and Mr. Huskins denied Plaintiff a manager position. (Id.)

Plaintiff's Charge of Discrimination does not state or imply that she was denied vacation leave in retaliation for complaining to Human Resources, (id.), as Plaintiff alleges in her Complaint. (See Compl. (Doc. 1) ¶¶ 44, 52-53.) Moreover,

- 34 -

retaliatory failure to promote, the act of retaliation alleged in her Charge of Discrimination, (EEOC Charge (Doc. 7-1) at 2), is not reasonably related to her claim of retaliatory denial of vacation leave, as they are different types of allegedly adverse employment actions. See Chacko, 429 F.3d at 509; Evans, 80 F.3d at 963-94. Accordingly, this court finds that Plaintiff has not exhausted her administrative requirements for her claims of retaliatory denial of vacation leave, (see Compl. (Doc. 1) ¶ 44, 52-53, 86), and will not consider these allegations for the purposes of her Title VII and ADA claims.

### e. **Allegation of Pay Discrimination**

Plaintiff has not exhausted her administrative requirements for allegations of pay discrimination that may have contributed to a hostile work environment.[5]

Plaintiff's Complaint alleges she "was working in a management position that was scheduled to make salary pay, but instead she was compensated at a much lower hourly rate."

---

[5] The sequence of events described in Plaintiff's Complaint suggests that any pay discrimination may have occurred around January 2017, (see Compl. (Doc. 1) ¶¶ 41-42), which is prior to the time period covered by the allegations in Plaintiff's Charge of Discrimination to the EEOC, (see discussion supra Part III.B.2.c.) To the extent that this alleged pay discrimination may have persisted after August 2017, this court considers separately whether Plaintiff has exhausted her administrative requirements for discriminatory pay.

(Compl. (Doc. 1) ¶ 42.) In her Response, Plaintiff argues that she has not alleged a claim for sex-based disparate pay in violation of Title VII, but instead, that Defendants' alleged failure to pay her "salary pay rather than hourly pay as a manager" contributed to the hostile work environment she experienced. (See Pl.'s Resp. (Doc. 11) at 12.)

Plaintiff's Charge of Discrimination does not, however, indicate that she experienced pay discrimination or that this discrimination contributed to a hostile work environment. (See EEOC Charge (Doc. 7-1) at 2.) In the Charge of Discrimination, verbal abuse is the only type of harassing conduct alleged in support of Plaintiff's claim of a hostile work environment. (See id.) Discriminatory pay is a distinct form of conduct from verbal abuse, see Chacko, 429 F.3d at 509; Dennis, 55 F.3d at 156-57 (holding that plaintiff could not assert Title VII claims regarding discrimination in hiring, training, and promotion because the plaintiff's charge of discrimination alleged only discriminatory discipline), and as such, Plaintiff has not exhausted her administrative requirements for allegations of discriminatory pay. Accordingly, this court will not consider these allegations, (Compl. (Doc. 1) ¶¶ 42, 71), when analyzing her Title VII and ADA claims.

- 36 -

### f.    <u>Constructive Discharge Claim</u>

Plaintiff has not exhausted her administrative requirements for her allegations of constructive discharge.

Plaintiff's Complaint does not explicitly state a formal cause of action for constructive discharge, (see Compl. (Doc. 1)), and allegations that might suggest a claim of constructive discharge arise only twice in Plaintiff's Complaint: First, at the end of her factual statement, Plaintiff alleges that the "hostile work environment was so extreme that she was unable to return back to work." (Id. ¶ 65.) Second, at the end of Plaintiff's Complaint in support of her claim that this court should pierce the corporate veil, Plaintiff alleges that, "[a]s a result of Defendants' control, it resulted in the constructive discharge of Plaintiff's employment causing her financial loss." (Id. ¶ 113.) In her Response, Plaintiff clarifies that "Plaintiff did not bring a cause of action for constructive discharge as it is a result of the hostile work environment." (Pl.'s Resp. (Doc. 11) at 15.)

Defendants argue that Plaintiff's claim of constructive discharged is barred because her Charge of Discrimination does not state a constructive discharge claim, (see Defs.' Reply (Doc. 12) at 5), as "[h]ostile work environment and constructive

- 37 -

discharge are separate and distinct legal claims with differing burdens of proof," (id. at 9).

This court agrees. "A constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985) (internal quotations omitted). Constructive discharge is a distinct claim from hostile work environment, and plaintiffs attempting to establish constructive discharge based on harassment must make a showing beyond that required to demonstrate a hostile work environment. Pa. State Police v. Suders, 542 U.S. 129, 147 (2004) ("A hostile-environment constructive discharge claim entails something more: a plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign."). Because a hostile work environment and constructive discharge are separate claims, Plaintiff must bring a separate cause of action for constructive discharge if she seeks relief on those grounds.[6]

---

[6] This court further finds that Plaintiff has not plausibly alleged she was subject to a hostile work environment based on associational disability. (See discussion infra Section III.C.2.)

Plaintiff has not alleged such a cause of action in her Complaint, (see Compl. (Doc. 1)), or her Charge of Discrimination, (see EEOC Charge (Doc. 7-1).) The only types of discrimination Plaintiff expressly alleges in her Charge of Discrimination are that she was "discriminated and retaliated against because of my sex (female), in violation of Title VII . . . and retaliated against for being a single mother and dealing with the care of my disabled son, in violation of Title I of the Americans with Disabilities Act . . . ." (EEOC Charge (Doc. 7-1) at 2-3.) Plaintiff's Charge of Discrimination indicates that she merely "left [her] employment, and ha[s] not returned." (Id. at 2.) The text of Plaintiff's Charge of Discrimination does not suggest that she was alleging constructive discharge. Cf. Young v. Nat'l Ctr. for Health Servs. Rsch., 828 F.2d 235, 237 (4th Cir. 1987) (finding that the plaintiff had adequately complained of constructive discharge to the EEOC because she stated that she felt "forced to resign").

Because the "touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,'" Sydnor v. Fairfax Cnty., 681 F.3d 591, 595 (4th Cir. 2012), and constructive discharge is not reasonably related to claims of retaliation and discrimination based on sex and

- 39 -

disability, this court finds that Plaintiff has not administratively exhausted her claims for constructive discharge.

### g. Allegations of Retaliatory Verbal Abuse

Plaintiff also has not exhausted her administrative requirements regarding allegations of retaliatory verbal abuse.

Defendants argue that Plaintiff's Complaint contains the "additional" allegation that Defendants "retaliated against her by subjecting her to verbal abuse." (Defs.' Br. (Doc. 7) at 9.)[7] In her Complaint, Plaintiff alleges that she "engaged in protected activity by and through her complaints to Human Resources, the Regional Manager and the General Manager regarding the abusive behavior to which she [] was subjected," (Compl. (Doc. 1) ¶ 84), and "[a]fter each complaint, Plaintiff

---

[7] Although Plaintiff's Complaint alleges instances of verbal abuse by Mr. Huskins and Mr. Spates that are not described in Plaintiff's Charge of Discrimination, (compare Compl (Doc. 1) ¶¶ 47-49; 54-57; 69-70 with EEOC Charge (Doc. 7-1) at 2), Defendants do not argue that Plaintiff has failed to exhaust her administrative remedies regarding these allegations, (see Defs'. Br. (Doc. 7) at 9). This court finds that these allegations of verbal abuse are reasonably related to those in Plaintiff's Charge of Discrimination. (EEOC Charge (Doc. 7-1) at 2.) Accordingly, this court will consider all allegations of verbal abuse after August 2017 when evaluating the merits of Plaintiff's hostile work environment claims. (See discussion infra Section III.C.)

- 40 -

would be verbally abused by several managers that Defendant employed," (id. ¶ 85).

The Fourth Circuit has held that "the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." Chacko, 429 F.3d at 509 (citing Dennis, 55 F.3d at 153, 156-57); see also Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 638 (9th Cir. 2002) (finding that plaintiff's administrative charge "did not allege a number of discriminatory acts that suggest a pattern, or that would have been sufficient to have apprised the EEOC of all the discriminatory acts he subsequently alleged as part of a continuing violation in his First Amended Complaint") (internal citations and modifications omitted). Moreover, "if the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be procedurally barred." Chacko, 429 F.3d at 509.

Plaintiff's Charge of Discrimination alleges that "[s]ince August 2017, I have been subjected to a hostile work environment by General Manager Rodney Huskins and Kitchen Manager Antoine Spates," (EEOC Charge (Doc. 7-1) at 2), and Plaintiff provides specific details about the nature of the verbal abuse and name-calling she alleges gave rise to that hostile work environment.

- 41 -

(Id.) Although Plaintiff alleges she "complained multiple times to Regional Director Paul (Last Name Unknown)," and "no action was taken," (id.), she does not indicate that the verbal abuse continued in retaliation for having complained. (Id.)

Plaintiff's Charge of Discrimination alleges only one other instance of conduct which could be characterized as verbal abuse. In that instance, which occurred after Plaintiff asked why she did not receive the Kitchen Manager position, Mr. Huskins allegedly said that Plaintiff "must be . . . stupid to think that he would promote me to the Kitchen Manager position, that I was . . . useless, and that he didn't want me there." (Id.) Taken in the light most favorable to Plaintiff, Mr. Huskins' comment could support a reasonable inference this was retaliatory verbal abuse for Plaintiff having complained to Human Resources.

Yet, a single, discrete instance of retaliatory verbal abuse, however, does not support a claim of a pattern or continuing violations, see e.g., Chacko, 429 F.3d at 509; Freeman, 291 F.3d at 638, and Plaintiff alleges such a pattern of retaliatory verbal abuse in her Complaint, (Compl. (Doc. 1) ¶¶ 63, 85, 88.) The single allegation of retaliatory verbal abuse in the Charge would not have been "sufficient to have apprised the EEOC of all the discriminatory acts" Plaintiff's

- 42 -

Complaint subsequently alleges. <u>Freeman</u>, 291 F.3d at 638. Accordingly, this court finds that Plaintiff has not administratively exhausted her claims of retaliatory verbal abuse. (<u>See</u> Compl. (Doc. 1) ¶¶ 63, 85, 88.)

h. **<u>Allegations of Retaliatory Non-Promotion</u>**

This court does find that Plaintiff has exhausted her administrative requirements regarding allegations of retaliatory non-promotion.

Plaintiff's Complaint alleges that Defendants "retaliated against Plaintiff for her complaints of verbal abuse and verbal assault," (<u>id.</u> ¶ 88), which included failing to promote her to Mr. Spates' Kitchen Manager position after Mr. Spates left HT-Carrboro. (<u>Id.</u> ¶¶ 60-63, 87.) Plaintiff's Charge of Discrimination alleges she was denied a promotion to a manager position, although there are inconsistencies as to whether the promotion was to the Kitchen Manager position vacated by Mr. Spates or to a "new management position for the front of the house." (EEOC Charge (Doc. 7-1) at 2.)

Defendants acknowledge that "Plaintiff's Charge and lawsuit include a claim for retaliatory non-promotion," (Defs.' Reply (Doc. 12) at 4), but argue that "this Court should hold that Plaintiff failed to exhaust her administrative remedies with respect to her retaliatory failure to promote claim" because

- 43 -

"Plaintiff's failure to promote . . . claim in this lawsuit is premised on her alleged non-promotion to a totally different position," (id. at 5; see also Defs.' Br. (Doc. 7) at 11). Defendants argue that this discrepancy is similar to that in Chacko v. Patuxent Institution, in which the plaintiff asserted a claim of harassment in his Charge and subsequent lawsuit, but where the evidence at trial involved different parties and different conduct. 429 F.3d at 511. In Chacko, the Fourth Circuit held that "a reasonable investigation of discrete instances of supervisor misconduct not involving name calling could not be expected to lead to a continuous pattern of nonsupervisory misconduct which did involve name calling," id. at 512, and thus, that the plaintiff had failed to exhaust his administrative remedies. Id. at 512-13.

This court disagrees. Unlike in Chacko, where the Fourth Circuit found that evidence of "coworker name calling," as presented at trial, was not reasonably related to the "three specific confrontations with supervisors not involving national-origin slurs," as alleged in the administrative charge, id. at 512, Plaintiff's Charge of Discrimination and Complaint describe the same incident of non-promotion and use it for the same purpose of advancing claims of retaliation, (compare EEOC Charge (Doc. 7-1) at 2, with Compl. (Doc. 1) ¶¶ 60-63). The factual

- 44 -

inconsistency about whether the position was for Mr. Spates'
former Kitchen Manager position or for a new position in the
front of the house does not negate a reasonable inference that
the allegations are reasonably related, as they "describe the
same conduct and implicate the same individuals." <u>Chacko</u>, 429
F.3d at 510 (citing <u>Kersting</u>, 250 F.3d at 1118).

This court will address whether this factual difference
bears on the merits of Plaintiff's cause of action for
retaliation, (<u>see</u> discussion <u>infra</u> Section III.E.2), but for the
reasons stated, this court finds that Plaintiff has not failed
to exhaust her administrative remedies with respect to her
allegations of retaliatory failure to promote.

C.   <u>**Plaintiff's First Cause of Action: Sex Discrimination**</u>
     <u>**and Hostile Work Environment under Title VII**</u>

Plaintiff's first cause of action states a claim of hostile
work environment based on sex in violation of Title VII. (Compl.
(Doc. 1) ¶¶ 66-75.) Plaintiff's Complaint alleges that
Defendants' employees, specifically Mr. Huskins and Mr. Spates,
(<u>id.</u> ¶ 72), "continually, verbally assaulted Plaintiff and
belittled her in front of other co-workers." (<u>Id.</u> ¶ 69.)

Title VII makes it unlawful for an employer to
"discriminate against any individual with respect to [her]
compensation, terms, conditions, or privileges of employment,

because of such individual's . . . sex." 42 U.S.C.
§ 2000e-2(a)(1). Because "an employee's work environment is a
term or condition of employment, Title VII creates a hostile
working environment cause of action," for sex discrimination.
EEOC v. R&R Ventures, 244 F.3d 334, 338 (4th Cir. 2001).

A plaintiff's complaint of hostile work environment based
on sex discrimination must allege facts that allow a court to
infer that "(1) the conduct was unwelcome; (2) it was based on
the plaintiff's sex; (3) it was sufficiently severe or pervasive
to alter the plaintiff's conditions of employment and to create
an abusive work environment; and (4) it was imputable on some
factual basis to the employer." Crockett v. Mission Hosp., Inc.,
717 F.3d 348, 354 (4th Cir. 2013).

Defendants argue that Plaintiff's claim should be dismissed
under the second and third prong, arguing "nowhere in
Plaintiff's Complaint does she describe any conduct that was
directed at her 'because of' her membership in a protected class
nor does she describe any conduct which is sufficiently severe
or pervasive so as to alter the conditions of her employment."
(Defs.' Br. (Doc. 7) at 12.) Defendants do not challenge whether
there is some basis for imputing liability to Defendants as
Plaintiff's employer, under the fourth prong. (See id. at
12-16.)

## 1. **Some, but not all, of the Alleged Conduct was based on Plaintiff's Sex**

Plaintiff has not plausibly alleged that all of the alleged conduct she describes "was based on her sex," as required under the second element of the prima facie case. Strothers v. City of Laurel, 895 F.3d 317, 329 (4th Cir. 2018).

"Title VII does not prohibit all verbal or physical harassment in the workplace — it is directed only at actions that occur 'because of' one of the protected statuses." Id. (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (internal quotations omitted)). A plaintiff must show that they were a target of the conduct based on their gender, but they are not required to show that "sexual advances or propositions" were involved. Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (internal citation omitted).

To determine whether conduct can be attributed to discrimination based on the employee's sex, "courts must view the behavior in light of the social context surrounding the actions." Strothers, 895 F.3d at 329. Courts in harassment cases must apply "[c]ommon sense" and "appropriate sensitivity to social context" to the "constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the

- 47 -

physical acts performed." Oncale, 523 U.S. at 82; see also Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (holding that plaintiff's complaint was "full of problems she experienced with her co-workers and supervisors. These facts, however, do not seem to have anything to do with gender, race, or age harassment"); Chapman v. Oakland Living Ctr., Inc., No. 1:18CV345, 2019 WL 3558580, at *3 (W.D.N.C. July 1, 2019), report and recommendation adopted, Civil Case No. 1:18-cv-00345-MR-WCM, 2019 WL 3558071 (W.D.N.C. Aug. 5, 2019) ("Even taking the allegations in the light most favorable to Chapman, the plausibility of her allegation that the birthday cake was racially motivated is questionable; the picture of the cake . . . does not seem to support her characterization.").

Plaintiff alleges four instances in which Mr. Huskins and Mr. Spates allegedly "continually, verbally assaulted Plaintiff and belittled her in front of other co-workers." (Compl. (Doc. 1) ¶ 69); see also Pl.'s Resp. (Doc. 11) at 12.) Based on the social context, this court finds that only two of these incidents – both by Mr. Spates – can reasonably be construed as reflective of sex-based animus.

First, Plaintiff alleges that Mr. Spates "told Plaintiff that she had no right to raise a male child on her own; that it would be like, 'a pigeon teaching an eagle how to fly, it's not

- 48 -

possible.'" (Compl. (Doc. 1) ¶ 47; see also Pl.'s Resp. (Doc. 11) at 12.) This court finds that, given the context and content of the statement, Mr. Spates' statement can be reasonably construed as commenting on Plaintiff's ability to parent her male child because she is a woman. Thus, Plaintiff has plausibly alleged that this statement was made on the basis of her sex.[8]

Second, Plaintiff alleges that after she requested to move from full-time to part-time to take care of her son, (Compl. (Doc. 1) ¶ 50), Mr. Huskins cursed at her and told her that she "should be ashamed of herself and that she was selfish for being home and collecting a government check." (Id. ¶ 51; see also Pl.'s Resp. (Doc. 11) at 12.) Unlike Mr. Spates' statement to Plaintiff regarding her ability to parent her son, in which a reasonable inference can be drawn that he was commenting on how her sex affected her ability to parent her child, Mr. Huskins' statement does not suggest or imply anything about Plaintiff's sex. Plaintiff may have found this conduct offensive, but "Title

---

[8] In her Charge of Discrimination, Plaintiff also alleges that Mr. Spates "made comments that my disabled son would probably be a drug dealer." (EEOC Charge (Doc. 7-1) at 2.) Although this statement might reflect that Mr. Spates thought Plaintiff was an unsuitable parent, unlike Mr. Spates' comparison of Plaintiff to a pigeon, (Compl. (Doc. 1) ¶ 47), this court cannot reasonably infer from the context that Mr. Spates was, by telling Plaintiff her son would become a drug dealer, suggesting anything about Plaintiff's ability to parent based on her sex.

VII does not prohibit all verbal or physical harassment in the workplace . . . ." <u>Oncale</u>, 523 U.S. at 80. Thus, Plaintiff has not plausibly alleged that this statement was made on the basis of her sex.

Third, Plaintiff alleges that, in or around February 2018, after Plaintiff completed an inventory of food in the restaurant, Mr. Spates "became upset and ridiculed Plaintiff in front of the entire staff, constantly insulted Plaintiff, wrote her up, and finally sent her home." (Compl. (Doc. 1) ¶ 54.) Plaintiff alleges that "Mr. Spates' abusive behavior continued as he repeatedly sent Plaintiff home and belittled her in front of other co-workers." (<u>Id.</u> ¶ 57; <u>see also</u> Pl.'s Resp. (Doc. 11) at 12.) Plaintiff later alleges that an investigation "found that Mr. Spates exhibited this kind of behavior to several other female employees," resulting in his transfer to a different location. (Compl. (Doc. 1) ¶ 59.)

Plaintiff's description of this conduct, on its face, does not support a reasonable inference that Mr. Spates was behaving based on sex-based animus. Mr. Spates' words do not explicitly or implicitly invoke Plaintiff's sex. Yet, the "constellation of surrounding circumstances," "common sense" necessitates that this court look beyond the "simple recitation of the words used" by Mr. Spates. <u>Oncale</u>, 523 U.S. at 82. Because Mr. Spates

- 50 -

allegedly belittled other female employees in the same manner, (Compl. (Doc. 1) ¶ 59), this court can reasonably infer that Mr. Spates was harassing Plaintiff because she is a woman.

It may be that a trial will demonstrate that Mr. Spates did not make these comments or that he treated all employees the same. Nevertheless, an allegation that he acted this way toward other female employees supports an inference that the complained of conduct was based on sex. Accordingly, Plaintiff has plausibly alleged that this conduct was based on her sex.

Fourth and finally, Plaintiff alleges that in or around April 2018, when Plaintiff asked why she was not given a promotion, Mr. Huskins told Plaintiff, "remember, you're part time. Now go home and deal with your disabled kid that needs you so much because there is no use for you here anymore." (Id. ¶ 63.) In her Charge of Discrimination, when recounting this conversation, Plaintiff alleges that Mr. Huskins said that Plaintiff was, "useless," "that he didn't want me there," "that I needed to just go ahead and quit, and to collect welfare and unemployment." (EEOC Charge (Doc. 7-1) at 2.) Reading both sets of statements together, Mr. Huskins does not explicitly comment on Plaintiff's sex, nor does the context in which they were made support a reasonable inference that he was implying anything

about her sex. Thus, Plaintiff has not plausibly alleged that
Mr. Huskins' statements reflect discrimination based on sex.

### 2. Plaintiff has Plausibly Alleged that Mr. Spates' Conduct was Severe or Pervasive

Plaintiff has plausibly alleged that Mr. Spates' conduct
was severe or pervasive, as required under the third element of
the prima facie case. Crockett, 717 F.3d at 354.

A hostile work environment is one which is so "permeated
with 'discriminatory intimidation, ridicule, and insult,'"
Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal
citations omitted), that it alters the "terms and conditions" of
the plaintiff's employment, Faragher v. City of Boca Raton, 524
U.S. 775, 788 (1998). Whether an environment is severe or
pervasive is determined by examining the totality of the
circumstances from the "perspective of a reasonable person in
the plaintiff's position." Oncale, 523 U.S. at 81. Relevant
factors include "the frequency of the discriminatory conduct;
its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it
unreasonably interferes with an employee's work performance."
Harris, 510 U.S. at 23. Hostile work environment claims "often
involve repeated conduct" because "in direct contrast to
discrete acts, a single act of harassment may not be actionable

on its own" unless that act is "extremely serious." <u>Boyer-Liberto v. Fontainebleau Corp.</u>, 786 F.3d 264, 277 (4th Cir. 2015). "Simple teasing, sporadic use of abusive language, offhand comments, jokes related to protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." <u>Taylor v. Republic Servs. Inc.</u>, 968 F. Supp. 2d 768, 788 (E.D. Va. 2013) (citing <u>Faragher</u>, 524 U.S. at 788). However, a work environment can be considered hostile if it is "consumed by remarks that intimidate, ridicule, and maliciously demean the status of women . . . ." <u>Smith</u>, 202 F.3d at 242.

The facts alleged support a reasonable inference that the conduct was pervasive. Plaintiff describes Mr. Spates' abusive behavior as occurring "constantly," (Compl. (Doc. 1) ¶ 54), and "repeatedly," (<u>id.</u> ¶ 57), but she only provides detailed descriptions of two incidents in which Mr. Spates harassed Plaintiff based on her sex between October 2017 and March 2018, (<u>see</u> discussion <u>supra</u> Section III.C.1). On their own, Plaintiff's allegations of ongoing harassment would likely be conclusory, but Plaintiff's allegations are supported by her allegations that an investigation found that "Mr. Spates exhibited this kind of behavior to several other female employees." (<u>Id.</u> ¶ 59.) Taken together, Plaintiff's alleged

- 53 -

facts support a reasonable inference that Mr. Spates routinely engaged in behavior that "intimidate[d], ridicule[d], and maliciously demean[ed] the status of women," Smith, 202 F.3d at 242, as required for a finding that the conduct alleged was pervasive. Revak v. Miller, No. 7:18-CV-206-FL, 2020 WL 3036548, at *8 (E.D.N.C. June 5, 2020) (finding plaintiff had plausibly alleged a hostile work environment). Cf. Perkins v. Int'l Paper Co., 936 F.3d 196, 210 (4th Cir. 2019) (finding two incidents, eight years apart, and occurring many years before plaintiff quit his job, are not pervasive); Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996) ("A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage.") (internal citations omitted); Engler v. Harris Corp., Civil Action No. GLR-11-3597, 2012 WL 3745710, at *5-6 (D. Md. Aug. 28, 2012) (finding that the Complaint "vaguely states that the conduct repeatedly occurred throughout the Plaintiff's time . . . and fails to provide dates, the number of instances, or why the instances would be viewed as severe and pervasive from an objective point of view").

Moreover, Plaintiff has plausibly alleged that the conduct was severe. The allegations that Mr. Spates "ridiculed Plaintiff in front of the entire staff, constantly insulted Plaintiff,

- 54 -

wrote her up," (Compl. (Doc. 1) ¶ 54), and "repeatedly sent

Plaintiff home," (id. ¶ 57), are more than mere "offhand

comments, and isolated incidents," which do not "amount to

discriminatory changes in the 'terms and conditions of

employment.'" Faragher, 524 U.S. at 788 (internal citations

omitted). Instead, Plaintiff's allegations support a reasonable

inference that the conduct was severe.

It may be that development of the factual record in

discovery could lead to a different result at summary judgment,

but at this stage of the proceedings, this court finds that

Plaintiff has plausibly alleged that the conduct was severe or

pervasive.

### 3. Defendants do not Challenge whether Mr. Spates' Conduct was Imputed to Plaintiff's Employer

Plaintiff argues that Mr. Spates' conduct was imputable to

Defendants, as his employer. (Pl.'s Resp. (Doc. 11) at 11.)

Because Defendants do not address Plaintiff's argument or

contest this issue, (see Defs.' Br. (Doc. 7) 12-16; Defs.' Reply

(Doc. 12) at 5-7), this court will defer resolution of this

issue until summary judgment or trial.

Accordingly, this court finds Plaintiff has plausibly

alleged the elements for a claim of hostile work environment

based on sex and will not dismiss the claim under Rule 12(b)(6).

**D. Plaintiff's Second Cause of Action: Disability Discrimination in Violation of the ADA**

Plaintiff's second cause of action states a claim of hostile work environment based on disability in violation of Title I of the ADA. (Compl. (Doc. 1) ¶¶ 76-81.)

Plaintiff's Complaint alleges that "Defendant allowed its employees to continually ridicule Plaintiff because of her necessity to provide for her son." (Id. ¶ 79.) As in their response to Plaintiff's claim of hostile work environment based on sex, Defendants argue that Plaintiff's claim should be dismissed because it does not describe conduct that was directed at her because of disability, nor was any alleged conduct severe or pervasive enough to alter the conditions of her employment. (Defs.' Br. (Doc. 7) at 12.)

Title I of the ADA prohibits discrimination against "a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). "[T]he ADA, like Title VII, creates a cause of action for hostile work environment harassment." Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001). "Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose — the prohibition of illegal discrimination in

- 56 -

employment — courts have routinely used Title VII precedent in ADA cases." Id. at 176; see also Fisher v. Walgreen, Co., No. 1:17 cv 225, 2018 WL 3750969, at *8 (W.D.N.C. Apr. 23, 2018), report and recommendation adopted sub nom. Fisher v. Walgreens, No. 1:17-CV-225-MOC-DLH, 2018 WL 3744016 (W.D.N.C. Aug. 6, 2018) ("The hostile work environment provisions in the ADA are modeled after Title VII's hostile work environment provisions.").

Thus, "[a]ppropriately modifying the parallel Title VII methodology," Fox, 247 F.3d at 176, an ADA plaintiff establishing a hostile work environment based on associational disability must prove: (1) she is a qualified individual who is known to have a relationship or association with a qualified individual with a known disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her relationship or association with someone with a known disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. See id. at 176-77; Smith v. Strayer Univ. Corp., 79 F. Supp. 3d 591, 602 (E.D. Va. 2015) (indicating the same elements structure for ADA claims as for Title VII claims).

- 57 -

1. **Not All of the Alleged Harassing Conduct was Based on Plaintiff's Relationship or Association with her Son**

Plaintiff has not plausibly alleged that all of the alleged conduct she experienced was based on her relationship or association with someone with a known disability, as required under the third element of the prima facie case.

"The associational discrimination provision in Title I was intended to protect qualified individuals from adverse job actions based on unfounded stereotypes and assumptions arising from the employees' relationships with particular disabled persons." Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 215 (4th Cir. 2002) (internal citations and quotations omitted). The ADA, like Title VII, "does not prohibit all verbal or physical harassment in the workplace – it is directed only at actions that occur because of one of the protected statuses." Strothers, 895 F.3d at 329 (citing Oncale, 523 U.S. at 80) (internal quotations omitted); see also Cannice v. Norwest Bank Iowa N.A., 189 F.3d 723, 726 (8th Cir. 1999) ("[T]he ADA, like Title VII, is not in effect a 'general civility code.'") (internal citations omitted). To determine whether conduct can be attributed to discrimination based on the employee's association with an individual with a disability, "courts must

view the behavior in light of the social context surrounding the actions." Strothers, 895 F.3d at 329.

Plaintiff has not plausibly alleged that any of the allegedly harassing conduct Mr. Spates exhibited towards Plaintiff was based on her association with her disabled son. First, Plaintiff alleges that Mr. Spates "told Plaintiff that she had no right to raise a male child on her own; that it would be like, 'a pigeon teaching an eagle how to fly, it's not possible.'" (Compl. (Doc. 1) ¶ 47.) Although Mr. Spates' analogy can be reasonably construed as commentary on Plaintiff's ability, as a woman, to parent her male child, (see discussion supra Section III.C.1), Mr. Spates does not explicitly reference her son's disability as a reason for why Plaintiff is an unsuitable parent. The facts alleged do not support a reasonable inference that Mr. Spates' statement was based on her association with her son.

Similarly, Plaintiff alleges that Mr. Spates allegedly "constantly insulted Plaintiff, wrote her up," (Compl. (Doc. 1) ¶ 54), and "repeatedly sent Plaintiff home." (Id. ¶ 57.) Plaintiff does not provide any information about the nature of Mr. Spates' insults such that this court could reasonably infer that they were based on her association with her disabled son. Unlike her Title VII claims of a hostile work environment, where

- 59 -

an investigation allegedly indicated that "Mr. Spates exhibited this kind of behavior to several other female employees," (id. ¶ 59), Plaintiff does not provide any allegations that Mr. Spates treated employees with disabled family members differently than other employees. (See id.) Accordingly, Plaintiff has not plausibly alleged that Mr. Spates' insults and decisions to send her home were based on her association with her son.

Finally, Plaintiff alleges only one instance where Mr. Spates explicitly commented on Plaintiff's son's disability. In that instance, Mr. Spates Plaintiff allegedly "made comments that my disabled son would probably be a drug dealer." (EEOC Charge (Doc. 7-1) at 2.) Given the context in which Plaintiff alleges they occurred, as part of a conversation about her abilities as a single parent, (id.), this court reasonably infers that this comment reflects Mr. Spates' feelings about single parents, rather than individuals with disabilities. Accordingly, given the alleged facts, this court finds that Plaintiff has not plausibly alleged that Mr. Spates harassed her based on her association with her disabled son.

Plaintiff has, however, plausibly alleged that Mr. Huskins' conduct was based on Plaintiff's association with her disabled son. Plaintiff alleges two incidents in which Mr. Huskins

- 60 -

engaged in verbal abuse towards Plaintiff. In the first, which occurred in or around December 2017, Mr. Huskins allegedly denied Plaintiff's request to "move from full time to part time so she could take care of her son and be home more often with him." (Compl (Doc. 1) ¶ 50.) Mr. Huskins allegedly "curse[d] at her," (id. ¶ 51), and said that "[she] was being selfish because [she] wanted to work part time, that the only reason why [she] wanted to work part time was because [she] wanted to collect government checks for [her] disabled son . . . ." (EEOC Charge (Doc. 7-1) at 2.) In the second instance, which occurred in or around April 2018 when Plaintiff allegedly spoke with Mr. Huskins about the promotion she did not receive, (Compl. (Doc. 1) ¶¶ 60-62), Mr. Huskins allegedly told Plaintiff to "go home and deal with your disabled kid that needs you so much because there is no use for you here anymore." (Id. ¶ 63.)

Plaintiff does not allege in her Complaint the nature of her son's disability nor whether Mr. Huskins was aware of the specific disability, but Mr. Huskins' use of the word "disabled" with regard to Plaintiff's son supports a reasonable inference that he perceived that Plaintiff's son was disabled in some manner. Moreover, Mr. Huskins explicit invocation of Plaintiff's association with her disabled son to justify why he believed she was "selfish," (EEOC Charge (Doc. 7-1) at 2), and should "go

- 61 -

home," (Compl. (Doc. 1) ¶ 63), supports a reasonable inference that his conduct towards her was based on her association with her disabled son and reflected animus based on her son's disability. Accordingly, Plaintiff has plausibly alleged that Mr. Huskins engaged in discriminatory conduct based on Plaintiff's associational disability.

### 2. **This conduct was not Severe or Pervasive**

Although Plaintiff may plausibly allege that Mr. Huskins engaged in discriminatory conduct based on Plaintiff's association with her disabled son, she has not plausibly alleged that this conduct was severe or pervasive.

As under Title VII, "[t]o recover on a hostile environment claim, a plaintiff must demonstrate not only that he subjectively perceived his workplace environment as hostile, but also that a reasonable person would so perceive it . . . ." Fox, 247 F.3d at 178. "Factors to be considered with respect to the objective component include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (internal citations and quotations omitted). Fellow employees' "mere insensitivity" to a plaintiff's associational disability, Rozier-Thompson v. Burlington Coat Factory Warehouse

of Pocono Crossing, Inc., Civil Action No. 3:05CV456-JRS, 2006
WL 1889651, at *6 (E.D. Va. July 7, 2006), does not rise to the
level necessary for a cognizable hostile work environment claim.
"[T]he behavior or remarks in question must be regular, and
deeply repugnant — not merely unpleasant." Id. (finding that the
defendant had not created hostile work environment based on the
plaintiff's disability). "Simple teasing, sporadic use of
abusive language, offhand comments, jokes related to protected
status, and isolated incidents (unless extremely serious) will
not amount to discriminatory changes in the terms and conditions
of employment." Taylor, 968 F. Supp. 2d at 788 (citing Faragher,
524 U.S. at 788).

Plaintiff does not plausibly allege that Mr. Huskins'
conduct rises to the level of being objectively hostile. First,
Plaintiff alleges only two instances of allegedly abusive
conduct by Mr. Huskins between December 2017 and April 2018,
(see Compl. (Doc. 1) ¶¶ 50-51, 60-63). Two instances of
allegedly abusive conduct over four months is not frequent
enough to be considered pervasive. See, e.g., Cannice, 189 F.3d
at 726 (finding the plaintiff's allegations of two incidents
that "could even colorably be connected" to plaintiff's
disability to be legally insufficient for an ADA hostile work
environment claim). Second, "[i]nsensitivity alone does not

amount to harassment," id., and Mr. Huskins' conduct, as alleged, was not threatening, humiliating, or interfered with Plaintiff's work performance. See Fox, 247 F.3d at 178.

Accordingly, Plaintiff has not plausibly alleged that she was subjected to a hostile work environment based on her association with her disabled son, and this court will grant Defendants' motion under 12(b)(6).

## E. Plaintiff's Third Cause of Action: Retaliation under Title VII

Plaintiff's third cause of action states a claim of retaliation in violation of Title VII. (Compl. (Doc. 1) ¶¶ 82-89.)

It is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

To survive a motion to dismiss, a plaintiff with a Title VII retaliation claim must allege facts that allow a court to find the following elements: "(1) that he engaged in protected activity, (2) that the employer took a materially adverse action against him and (3) there is a causal connection between the

protected activity and the adverse action." Perkins, 936 F.3d at 213; see also Savage v. Maryland, 896 F.3d 260, 276 (4th Cir. 2018).

Alternatively, a plaintiff may survive a motion to dismiss by alleging direct evidence of retaliation. Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018). Direct evidence is evidence that the employer "announced, or admitted, or otherwise unmistakably indicated that [the forbidden consideration] was a determining factor." Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982). The choice for how to proceed is "left to the plaintiff's discretion," Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015), and Plaintiff offers only indirect evidence of discrimination, (see Pl's. Resp. (Doc. 11) at 12-13).

### 1.  **Protected Activity**

Protected oppositional activities may include "staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities, as well as complaints about suspected violations." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005) (internal citations, modifications, and quotations omitted). The Fourth Circuit has recognized that Title VII "protects activity in opposition not only to employment actions actually unlawful

- 65 -

under Title VII but also employment actions an employee reasonably believes to be unlawful." Id. at 406.

Plaintiff alleges she engaged in protected activities by complaining to Human Resources, her Regional Manager, and Mr. Huskins about the allegedly abusive behavior she experienced. (Compl. (Doc. 1) ¶¶ 48, 55, 58, 84.) In response, Defendants argue that Plaintiff's claim should be dismissed because "Plaintiff could not have reasonably believed that she had opposed unlawful activity when she complained about Spates to her superiors and Human Resources," because "the incidents complained of do not constitute harassment under Title VII." (Defs.' Br. (Doc. 7) at 17 (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 121 (2001).)[9]

This court disagrees, as Plaintiff has plausibly alleged that she was subjected to a hostile work environment based on her sex. (See discussion supra Section III.C.1.) A reasonable

_____

[9] Defendants argue that Plaintiff has "waived any opposition" to Defendants' Motion to Dismiss because her Response does not address Defendants' arguments regarding whether she engaged in a protected activity and whether she was qualified for position she sought, (Defs.' Reply (Doc. 12) at 7) (citing Brand v. N.C. Dep't of Crime Control & Pub. Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (holding that plaintiffs who fail to address a claim in response to a motion for summary judgment waive the claim). Defendants' citation of Brand is inapplicable, as it applies to plaintiffs at Summary Judgment, and this is a Motion to Dismiss.

employee in Plaintiff's position could have believed Mr. Spates'
conduct had created an unlawful hostile work environment based
on sex. Having alleged that she complained about Mr. Spates'
conduct, (id. ¶¶ 48, 55, 58), this court finds that Plaintiff
engaged in protected activities under Title VII.

### 2. Adverse Employment Action

Plaintiff alleges she was subjected to an adverse
employment action when she was passed over for a promotion
without adequate consideration for the position. (Compl. (Doc.
1) ¶ 87.)

Defendants argue that Plaintiff's claim should be dismissed
because Plaintiff "has not alleged that she was specifically
qualified for the managerial position" she did not receive.
(Defs.' Br. (Doc. 7) at 19 (citing Brown v. McLean, 159 F.3d
898, 902 (4th Cir. 1998).)

Yet, Defendants' citation of Brown v. McLean is inapposite.
In Brown, the plaintiff brought a suit for discriminatory
failure to promote under Title VII, in which a plaintiff's
qualification for the position is part of the prima facie case.
159 F.3d at 902. Here, Plaintiff has alleged a claim of
retaliatory failure to promote, where this is not an element.
See Perkins, 936 F.3d at 213 (recalling that a plaintiff in a
retaliation claim must prove "(1) that he engaged in protected

- 67 -

activity, (2) that the employer took a materially adverse action against him and (3) there is a causal connection between the protected activity and the adverse action"). Courts explicitly recognize "failing to promote" as an adverse employment action, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998), and all that is required at the motion to dismiss phase is that a plaintiff plausibly alleges that they were not promoted to a position. See Tasciyan, 820 F. Supp. 2d at 675-76 (finding the plaintiff had plausibly alleged a claim of retaliation to survive a motion to dismiss).

Plaintiff has met this standard. As described in both her Complaint and her Charge of Discrimination, after Plaintiff complained to Human Resources in March 2018, (Compl. (Doc. 1) ¶ 58; EEOC Charge (Doc. 7-1) at 2), Human Resources investigated Mr. Spates' conduct, resulting in him being demoted and transferred to a different location, (Compl. (Doc. 1) ¶ 59; EEOC Charge (Doc. 7-1) at 2.) In or around April 2018, and after Mr. Spates' transfer, Plaintiff alleges she "immediately informed Mr. Huskins that [she] was interested in the Kitchen Manager position." (EEOC Charge (Doc. 7-1) at 2.) When she asked Mr. Huskins about "the open manager position that needed to be filled," Mr. Huskins allegedly told her it was not open, as it was not going to be filled. (Compl (Doc. 1) ¶ 60.) Plaintiff's

- 68 -

Charge of Discrimination alleges Mr. Huskins created "a new management position for the front of the house," (EEOC Charge (Doc. 7-1) at 2), while her Complaint states that another employee was promoted to Mr. Spates' former Kitchen Manager position, (see Compl. (Doc. 1) ¶¶ 60-61).

Although Plaintiff's Charge of Discrimination and Complaint provide different accounts about the nature of the position that was ultimately filled, both documents allege that she sought a promotion to manager and did not receive it. This is, by definition, a failure to promote. Cf. Chandler v. Casual Corner Grp., Inc., 9 F. App'x 235, 236 (4th Cir. 2001) ("The district court . . . properly found no adverse action because it was undisputed that [the plaintiff] never applied for the position.") Accordingly, this court finds that Plaintiff has plausibly alleged an adverse employment action of failure to promote.

### 3.   **Causal Connection**

Plaintiff argues that there is a causal connection between her complaints about Mr. Spates' conduct and Mr. Huskins' decision not to promote Plaintiff, (Pl.'s Resp. (Doc. 11) at 13,), specifically that "Mr. Huskins told her that she was denied the promotion to manager in April 2018 because of what happened between her and Mr. Spates." (Id. (citing Compl. (Doc.

- 69 -

1) ¶¶ 59-62).) Defendants do not challenge Plaintiff's argument. (<u>See</u> Defs.' Br. (Doc. 7) at 19; Defs.' Reply (Doc. 12) at 7.)

Because Defendants do not challenge this causal connection, this court will not conduct additional analysis, and instead, will defer resolution of this issue until summary judgment or trial. This court finds that Plaintiff has plausibly alleged all of the elements for a claim of retaliation and will deny Defendants' Motion to Dismiss the claim under Rule 12(b)(6).

## F.    **Plaintiff's Fourth Cause of Action: Negligent Hiring, Supervision, and Retention**

Plaintiff's fourth cause of action states a claim of negligent hiring, supervision, and retention under North Carolina law. (Compl. (Doc. 1) ¶¶ 90-100.)

To state a claim for negligent hiring, supervision and retention, a plaintiff must plausibly allege:

> (1) the specific negligent act on which the action is founded . . . (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in "oversight and supervision," . . . . ; and (4) that the injury complained of resulted from the incompetency proved.

<u>Foster v. Nash-Rocky Mount Cnty. Bd. of Educ.</u>, 191 N.C. App. 323, 330-31, 665 S.E.2d 745, 750 (2008) (citing <u>Medlin v. Bass</u>,

- 70 -

327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990) (emphasis omitted; alteration in original)).

The Fourth Circuit has simplified this test into two elements, stating that to hold an employer liable for negligent hiring, supervision, or retention, a plaintiff must show: "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." Smith, 202 F.3d at 249-50. The parties proceed under the Fourth Circuit's formulation, (Defs.' Br. (Doc. 7) at 20; Pl.'s Resp. (Doc. 11) at 13), and this court will do the same.

An "essential element" of claims for negligent retention, hiring, or supervision is that the employer "committed a tortious act resulting in plaintiffs' injuries." Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 774 (4th Cir. 1997). "In other words, North Carolina courts will not hold an employer vicariously liable unless an employee has committed a cognizable wrong against the plaintiff." Id. (granting summary judgment because the plaintiff did not establish that there was an underlying tort committed).

Defendants argue that Plaintiff's claims should be dismissed because "Plaintiff fails to allege that Huskins or

- 71 -

Spates committed a tortious act that is cognizable under North Carolina common law." (Defs.' Br. (Doc. 7) at 20.) Defendants argue that Plaintiff's Complaint "only contains allegations of Title VII and ADA violations against Huskins and Spates," (id. (citing Jackson v. FKI Logistex, 608 F. Supp. 2d 705, 708 (E.D.N.C. 2009)), for the proposition that violations of Title VII and the ADA are not violations of North Carolina common law.

In response, Plaintiff argues her complaint "cites assault and abuse by Mr. Penny, Mr. Spates and Mr. Huskins." (Pl.'s Resp. (Doc. 11) at 13.) She further argues that "[t]hey committed tortious acts that resulted in Plaintiff being denied a promotion and ultimately losing [her] job," (id.), and "[t]he standard of review here is as to the allegations in Plaintiff's Complaint, not the weight of the evidence," (id. at 14).

Plaintiff is correct that, at the motion to dismiss phase, the allegations in the complaint form the basis of the court's analysis, as "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotations omitted). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," id., and Plaintiff has not plausibly alleged

that Defendants committed an underlying tort that is recognized under North Carolina common law.

### 1. **Plaintiff's Federal Claims**

Federal and state precedent does not support a finding that Title VII or ADA claims can serve as the underlying common law tort for negligent hiring, retention, or supervision claims. No North Carolina appellate court has expressly addressed this issue. <u>Jackson</u>, 608 F. Supp. 2d at 707. In <u>McLean v. Patten Communities, Inc.</u>, the closest Fourth Circuit case on this issue, a plaintiff brought claims of negligent retention and supervision under North Carolina law arising from alleged racial and sexual harassment under 42 U.S.C. § 1981 and N.C. Gen. Stat. § 143-422.2. 332 F.3d 714, 719 (4th Cir. 2003). The Fourth Circuit affirmed summary judgment in favor of the defendants. <u>Id.</u> The court found that a violation of 42 U.S.C. § 1981 did not qualify as a common law tort and that because the plaintiff's claim of negligent retention or supervision "had to be based on harassment or retaliation on account of race or sex, neither harassment or retaliation being common law torts in North Carolina," the plaintiff had not separately alleged a common law tort. <u>Id.</u>

In two decisions, courts within the Middle District of North Carolina have held that a Title VII sexual harassment

- 73 -

violation may serve as a "tortious act" under North Carolina law for purposes of a negligent supervision claim. Efird v. Riley, 342 F. Supp. 2d 413, 429-30 (M.D.N.C. 2004) (denying the motion to dismiss); Barbier v. Durham Cnty. Bd. of Educ., 225 F. Supp. 2d 617, 629-30 (M.D.N.C. 2002) (same). However, the court in Efird did not cite the Fourth Circuit's opinion in McLean, see Efird, 342 F. Supp. 2d at 429-30, and the decision in Barbier predated McLean, see Barbier, 225 F. Supp. 2d at 617.

Most district courts deciding this issue after McLean have either held that violations of Title VII are statutory torts, not common law torts. See, e.g., Barrow v. Branch Banking & Tr. Co., Civil Action No. 3:16-CV-675-RJC-DCK, 2017 WL 3222660, at *8-9 (W.D.N.C. July 7, 2017); Davis v. Gregory Poole Equip. Co., No. 2:14-CV-12-BO, 2015 WL 8484261, at *4 (E.D.N.C. Dec. 8, 2015) ("By definition, a violation of Title VII is not a common law tort. Accordingly, it cannot serve as the predicate tortious act for a successful negligent supervision/retention claim."); Jackson, 608 F. Supp. 2d at 707-08; Rathbone v. Haywood Cnty, No. 1:08cv117, 2008 WL 2789770, at *3 (W.D.N.C. July 17, 2008). Or declined to decide whether North Carolina law recognizes Title VII violations as tortious acts for the purposes of a negligent hiring, retention, or supervision claim, deciding the case on other grounds, see, e.g., Kennedy v. Argueta, No.

- 74 -

1:16CV276, 2017 WL 1207628, at *9 n.8 (M.D.N.C. Mar. 31, 2017) (finding that because Plaintiff also alleged the common law tort of battery in connection with her negligent supervision or retention claim, the court "need not decide whether North Carolina law recognizes Title VII violations as tortious acts"); Hasker v. Argueta, No. 1:16CV367, 2017 WL 1214497, at *10 n.7 (M.D.N.C. Mar. 31, 2017) (same).

No state or federal court has addressed whether ADA claims may serve as common law torts under North Carolina law. The structure of the ADA was modeled on that of Title VII, see Fox, 247 F.3d at 176 (finding that "the ADA echoes and expressly refers to Title VII" and "the two statutes have the same purpose"), so it is reasonable to believe that if Title VII violations cannot serve as an underlying tort, ADA violations also will not suffice.

In light of this precedent, this court finds that Plaintiff's Title VII and ADA claims cannot serve as the underlying torts for Plaintiff's negligent hiring, supervision, or retention claims. North Carolina courts have not recognized harassment or retaliation as common law torts, McLean, 332 F.3d at 719, and Plaintiff's claims under Title VII and the ADA allege that Defendants engaged in harassing and retaliatory conduct, (see discussion supra Sections III.B-D). Following the

- 75 -

Fourth Circuit's approach in McLean, absent a clear indication from the North Carolina courts or legislature, it would be inappropriate for a federal court to allow Title VII and ADA claims of hostile work environment and retaliation to serve as tortious acts under North Carolina law. See McLean, 332 F.3d at 719 ("[A]bsent a clear indication from the North Carolina courts or legislature it would be inappropriate for a federal court to create a private right of action under [N.C. Gen. Stat. § 143-422.2].") (internal citations and quotations omitted).

## 2. **Plaintiff's State Law Claims**

Plaintiff has not alleged an independent state law tort which could serve as the underlying tort for her negligent hiring, supervision, and retention claims.

In support of her cause of action, Plaintiff alleges that she was "subjected to assault and abuse by Mr. Spates and Mr. Huskins," (Compl. (Doc. 1) ¶ 91), but does not expressly allege a claim for assault or abuse based on their conduct. Moreover, the only conduct which could support an allegation that Mr. Huskins and Mr. Spates behaved abusively is verbal harassment, and North Carolina does not recognize harassment as a common law tort. McLean, 332 F.3d at 719; see also Jones v. Duke Energy Corp., 43 F. App'x 599, 600 (4th Cir. 2002).

Accordingly, allegations of abuse cannot serve as the underlying tort.

Construing Plaintiff's cause of action more broadly to include other conduct described in her Complaint, including allegations that Defendants may have constructively discharged or failed to promote Plaintiff, (see Compl. (Doc. 1) ¶¶ 60-63), does not resolve this issue. North Carolina courts also do not recognize state common law claims for failure to promote, Roberts v. Wal-Mart Stores, Inc., 503 F. Supp. 2d 787, 788-89 (E.D.N.C. 2007), or constructive discharge, McFadden v. Trend Cmty. Health Servs., 114 F. Supp. 2d 427 (W.D.N.C. 2000).

In her Complaint, Plaintiff alleges that Mr. Huskins and Mr. Spates subjected Plaintiff to assault, (Compl. (Doc. 1) ¶ 91), but Plaintiff fails to plausibly allege that Mr. Huskins or Mr. Spates assaulted Plaintiff. Under North Carolina law, the elements of assault are "intent, offer of injury, reasonable apprehension, apparent ability, and imminent threat of injury." Wilkerson v. Duke Univ., 229 N.C. App. 670, 675, 748 S.E.2d 154, 159 (2013) (internal citations and quotations omitted). To state a claim for assault, a plaintiff must plausibly allege an "overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another." Dickens v. Puryear, 302 N.C. 437, 445,

- 77 -

276 S.E.2d 325, 331 (1981) (internal citations and quotations omitted). Nowhere in Plaintiff's Complaint does she allege conduct that would lead to a reasonable inference that Mr. Huskins or Mr. Spates acted with force and violence towards Plaintiff or with the intent to do immediate physical injury to her. (See Compl. (Doc. 1).) At best, their statements to Plaintiff could be described as belittling, offensive, or insulting. (See id. ¶¶ 47, 54, 57, 63.) In the absence of conduct in Plaintiff's Complaint that rises to the level of being physically threatening, Plaintiff has not plausibly alleged that Mr. Huskins or Mr. Spates assaulted Plaintiff, and thus, their conduct cannot give rise to an underlying tort of assault.

In her Response, Plaintiff alleges Mr. Penny's conduct also serves as an underlying tortious act for her negligent hiring, supervision, or retention claims, (Pl.'s Resp. (Doc. 11) at 13-14), but Plaintiff does not reference Mr. Penny's conduct in her Complaint when stating her cause of action. (Compl. (Doc. 1) ¶¶ 90-100.) Even if Plaintiff had referenced Mr. Penny's conduct in her cause of action, Plaintiff has failed to meet the pleading standard for her claim of civil assault by Mr. Penny. (See discussion infra Section III.F.) Accordingly, Mr. Penny's conduct cannot serve as the underlying tort.

Because Plaintiff has not plausibly alleged any common law tort which could serve as the basis for her claim of negligent hiring, retention, or supervision, this court will grant Defendants' Motion to Dismiss the claim under Rule 12(b)(6).

### G. **Plaintiff's Fifth Cause of Action: Civil Assault**

Plaintiff's fifth cause of action is for civil assault in violation of North Carolina law based on conduct by Mr. Penny. (Compl. (Doc. 1) ¶ 101-08.)

As previously stated, under North Carolina law, the elements of assault are "intent, offer of injury, reasonable apprehension, apparent ability, and imminent threat of injury." Wilkerson, 229 N.C. App. at 675, 748 S.E.2d at 159 (internal citations and quotations omitted). To state a claim for assault, Plaintiff must plausibly allege an "overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another." Dickens, 302 N.C. at 445, 276 S.E.2d at 331 (internal citations and quotations omitted). "The display of force or menace of violence must be such to cause the reasonable apprehension of immediate bodily harm," id. (internal quotations and citations omitted), and "[a] mere threat, unaccompanied by an offer or attempt to show violence, is not an assault." Id.

Plaintiff alleges that in or around August 2016, a general manager asked Plaintiff to help Mr. Penny with the grill. (Compl. (Doc. 1) ¶ 33.) Mr. Penny allegedly told Plaintiff to, "get . . . off his set," and "repeatedly" told Plaintiff that he "hit[s]" women. (Id. ¶ 34.) Plaintiff alleges that another employee "had to step in between Plaintiff and Mr. Penny to remind him that Plaintiff was a woman." (Id. ¶ 35.) Plaintiff alleges that "Mr. Penny continued to verbally assault Plaintiff as well as other staff members." (Id. ¶ 38.)

Plaintiff's allegations do not support a reasonable inference that Mr. Penny placed Plaintiff in reasonable apprehension of immediate risk of physical injury. In her description of the events, Plaintiff expressly characterizes Mr. Penny's conduct as a purely "verbal[] assault." (Id.) Although he allegedly said that he "hit[s]" women, (id. ¶ 34), Plaintiff's description of the incident does not indicate that he intended to hit her specifically. See Britt v. Hayes, 142 N.C. App. 190, 192, 541 S.E.2d 761, 762 (2001) (finding that the facts alleged must show "intent to cause apprehension of an imminent offensive or harmful contact").

Mr. Penny's alleged comments are also not the type of menacing conduct that courts deem sufficient to give rise to a reasonable apprehension of imminent harmful conduct. See Boggess

- 80 -

v. Roper, No. 3:04cv92, 2006 WL 2569206, at *13 (W.D.N.C. Sept. 1, 2006) (finding no assault where plaintiff's co-worker allegedly "slammed his fist down," yelled at her, and threw things when she performed poorly at work). Plaintiff's allegation that another employee "had to step in between Plaintiff and Mr. Penny," (Compl. (Doc. 1) ¶ 35), does not change this court's analysis, as Plaintiff does not provide additional details about Mr. Penny's conduct, aside from the words he allegedly spoke, which would support a reasonable inference that Mr. Penny had engaged in an overt act or an attempt to do immediate physical injury to Plaintiff.

Accordingly, this court finds Plaintiff's allegation that Mr. Penny "subjected [her] to an immediate apprehension of harm," (id. ¶ 102), to be conclusory and unsupported by the facts alleged in her Complaint. Because Plaintiff has not plausibly alleged all of the elements of a claim of civil assault, this court will not consider whether Plaintiff's Complaint plausibly alleges facts that satisfy the exclusivity doctrine of the North Carolina Workers' Compensation Act. (See Defs.' Br. (Doc. 7) at 20-21.) This court will grant Defendants' Motion to Dismiss Plaintiff's claim under Rule 12(b)(6).

IV.   <u>**CONCLUSION**</u>

For the foregoing reasons, this court finds that
Defendants' Motion to Dismiss, (Doc. 6), should be granted in
part and denied in part.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss,
(Doc. 6), is **GRANTED IN PART AND DENIED IN PART.** The motion is
**GRANTED** as to Claims Two, Four, and Five and these claims are
dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The motion is
**DENIED** as to Claims One and Three.

This the 30th day of September, 2020.

_____
United States District Judge